The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right. First case we'll hear this morning is Ashford v. PricewaterhouseCoopers and Ms. Walker. Good morning, Your Honors. Helgi Walker for Appellant PricewaterhouseCoopers. The District Court's decision violates a black letter law under the Federal Arbitration Act, as set forth in six decades of controlling Supreme Court and circuit precedent. Under that precedent, it is crystal clear, and I'm quoting from this Court's decision in Washington Square, that any ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration. Surprisingly, the District Court opinion did not even mention the FAA, even though we substantially briefed that issue below. Unfortunately, the District Court opinion does everything it can to avoid compelling arbitration. That approach, respectfully, evinces the very sort of judicial hostility that the FAA was meant to countermand. On that question, understanding that presumption in favor of arbitration, does that presumption or rule of construction take precedence over any ambiguity in favor of the drafter? How do you deal with that if you've got two different rules of contractual interpretation? Is one superior to the other? It's clear that the FAA rules supplant any ordinary rules of contract construction. And on the point that sometimes contracts are read against the drafting party, which is one of the only two reasons Ms. Ashford raises in response to the FAA argument, Supreme Court destroyed that proposition last term in Lamps Plus. Justice Roberts, or maybe it was Justice Gorsuch, expressly said that the FAA provides the rule of construction here, not the question of who drafted the agreement. And your decision, this Court's decision in Washington Square, stands for that proposition. So does American Recovery. So does the People's case. So does the Choice Hotels case. So does the Long v. Silver case. Those cases all faithfully adhere to the rule that the Supreme Court set out, that Justice Brennan set out in 1960, before I was even born, in the United Steelworkers case. You know, that opens the question. Somebody ask me, how old are you? I just saw that question. Well, my point is this law has been very clear for a very long time. It's exceedingly well settled. Moving from that, I'm not going to ask you how old you are. Fifty-three, I'm an officer. It was before I was born, too. The district court appears to frame your position to be that federal law and the Frank Amendment are one and the same. And I thought your argument was federal law applies to any federal law that might prohibit arbitration of Title VII cases. And the particular one at issue here was the Frank Amendment. With all respect, the district court misconstrued what we argued, which was pretty straightforward, which is that federal law means federal law. Federal law includes the Frank Amendment, which is codified in the FAR regulations that govern government contracts. Those regulations are obviously federal law. We never argued, though, that federal law meant only the Frank Amendment. That's just something, if you go through the papers below, was never asserted. So it was a very artificial approach to what our argument was. Our argument, simply, Judge Quattlebaum, was that federal law means, well, federal law. And at the time, the relevant federal laws in play were the Frank Amendment, which had been adopted and was set to be implemented with implementing regs in the FAR, and President Obama's executive order, which would have extended that ban on doing business with federal contractors who require the arbitration of Title VII claims as a condition of employment to all agencies. Those implementing regs were then struck down and joined by a federal district court. So there was a quickly evolving legal landscape here. And my client was doing its best, in the best of faith, to account for that evolving legal landscape and to also account for the possibility that our status as a party to these kinds of covered government contracts might change. So let's move that to the language. And, you know, you have the issue of whether until federal law no longer prohibits whether that applies to a change of law or to a change of facts. And I understand your argument is that it applies to both. And I understand that position. I'd ask you to explain, because I think factually, is it true that the facts that made the Frank Amendment not applicable were in place at the time your client and Ms. Ashford entered into the employment agreement? At the time, this form agreement, and it is a form agreement that this is a big company, uses for all domestic employees. At the time the form agreement was drafted, PwC was subject to contracts that were covered by the Franken Amendment. That's in the record at appendix page 21 in our original motion to compel. At the time Ms. Ashford signed this agreement, she doesn't deny that she signed it. As a matter of her own volition, in March of 2015, PwC was no longer covered by the Franken Amendment. So in light of that, and I get that it's a form agreement, and maybe this question puts an employer in a difficult situation, but the words no longer in the operative phrase here, that federal, until federal law, no longer prohibits the firm. One might say that suggests, whether it be factual or legal, some change from the time Price Waterhouse and Ms. Ashford entered into an agreement. And as I understand it, there was no change. There was nothing prohibiting federal, under federal law, or the facts at the time they entered into agreement. What does no longer in your contract mean? Well, let me start, Your Honor, by looking at the provision in context. The provision also used the words unless and until, and New York courts have said that is the quote, unmistakable language of conditionality. Nobody could have come to that agreement and walked away with the understanding that there was an unqualified right to bring Title VII claims in court. And as the Supreme Court instructed in United Steelworkers, and this court took the same approach in Choice Hotel to an exclusion provision, we have to look at the exclusion provision, and even if it's arguably vague, and even if it's arguably not drafted as well as it might have been in hindsight, we also have to read it against the backdrop of the general arbitration requirement. That arbitration requirement at page 45 of the appendix is undisputedly broad and undisputedly clear. And the Supreme Court in United Steelworkers say we read the exclusion clause narrowly, and this court did the same thing, as I said, in Choice Hotels, and we read the general arbitration requirement broadly. So, Judge Quattlebaum, let me just squarely respond to, I think, your suggestion. Could the arbitration clause have been written more artfully, even more clearly, in hindsight? Perhaps. But that is absolutely not the standard under the FAA. The clear black-letter rule is, unless it may be said with positive assurance that the arbitration clause is not even susceptible of an interpretation that covers the asserted dispute, the scales tip in favor of coverage under an arbitration agreement. That's a test from United Steelworkers. That's a test from Washington Square, Choice Hotels, American Recovery, case after case after case. I have a question in that vein just about what is this language about no longer prohibits the firm. Reading it on its face, it doesn't seem to be, first blush, ambiguous. This provision puts someone on notice that at some point in the future, if you decide to bring a Title VII claim, you may or may not be able to bring in an arbitration depending on facts or law that might change. And the provision appears unambiguous on its face. Only when we've learned these additional facts about, well, at the time, PwC wasn't, in fact, prohibited by the Franklin Amendment. I learned those additional facts, and then it makes me wonder about whether the clause was correct or misleading or what have you. I guess my question is, does that make it ambiguous because I have these additional facts when I read it? Or does it just mean that I need to question the conscionability of it or whether there was a unilateral mistake? Or what do I do with this information? Or does it not matter from your perspective because if you're on notice that a condition might affect whether you can bring a Title VII claim in arbitration, then that's all you need? I'm just wondering where it goes in my analysis. So it's a great question. Under the FAA, for questions of scope, to the extent that you might believe that the provision gave some sort of impression about the state of federal law on the day that she signed it, that's actually irrelevant. That's an argument that I think goes, at best, to procedural unconscionability under New York law, and I'll turn to that in a minute. But this Court has made super clear in Choice Hotels where you actually rejected as incorrect the reading given to the exclusion clause by the party moving to compel. You said, well, it's still, at best, a minimally plausible alternative to the other side's reading. So as long as we pass the at best, and again, we think we have a good interpretation of the provision, but as long as we pass what is a very low bar, the at best, it's a minimally plausible alternative reading, then the agreement tips in favor of coverage in terms of the scope. If you think there's any question about the meaning of the provision on day one, that would go in the procedural unconscionability doctrinal bucket. And New York law is exceedingly rigorous on that point. And I think Ms. Ashford's case suffers from a fatal, frankly devastating blow with respect to procedural unconscionability. She has never alleged that she even read this agreement. How could she possibly have come away with even indulging the assumption that the provision gave some impression about the state of law on day one when she signed the agreement? How can you come away with that impression when you're not willing to allege and have failed to allege that you even read the agreement? And New York courts, it's not just my opinion, New York courts have been exceedingly rigorous about this. The Second Circuit in Ragone at page 122 said, we are rejecting a rule that allows a party to avoid their obligation to carefully read an agreement just because it's an arbitration agreement that covers a Title VII claim. Excuse me. I was just going to ask a similar question. You know, picking on the language is always easy. It looks like the agreement intended for arbitration, except when you couldn't do arbitration. But then if it's a condition, as you suggest, and that's fine, it talks about the firm. And while she's an employee of Price Waterhouse, the firm is defined to include all its subsidiaries. So the question might be that she still doesn't have to engage in arbitration if any subsidiary is engaged in a contract with Department of Defense. And I don't know if we know that, whether that's so or not, or whether that's the way it's to be read. In other words, another way to read it would be, the firm is that firm which happens to be applicable to you as an employee. Or it could be any subsidiary because it depends on the Franken Amendment, whether it includes all subsidiaries and affiliated corporations. But I was wondering how you would wish that clause to be read when firm is recognized to be a defined term to include subsidiaries and affiliates. This goes to the district court's ruling on the sufficiency of the evidence in terms of the triggering of the limitation, and that was clear error in light of the language of the arbitration agreement to Judge Niemeyer. Firm is defined to mean Price Waterhouse, Cooper, LLP, and or any subsidiary or affiliate. And or, obviously, does not mean and. So your argument is that the and or suggests that when it's used later in the opinion, it is the particular firm that is applicable to that employee. It has to be, Judge Niemeyer. And or is not the same thing as and. The district court read the slash or entirely out of the arbitration agreement. And the only entity that could possibly move to compel arbitration within the meaning of the Title VII provision is the defendant in this case. You could say that the arbitration exception applies only if all these affiliates and, Price Waterhouse and its affiliates and its subsidiaries, or you could read the exclusion to apply in any circumstance where one subsidiary is contracted with the Department of Justice, even though Price Waterhouse has not been. So in which case, if it's a condition, she would argue, I suppose, that it still applies because at least one affiliate has it. Two points in response quickly, if I might. We think it's an absurd construction of the arbitration agreement to say, for purposes of the evidentiary question, that it applies to PwC and every single subsidiary and affiliate in the United States. Let's look at the sentence in which the term and or appears. That sentence refers to, quote, legal disputes that may arise between you and PwC LLP and or any subsidiary or affiliate. The legal dispute that has arisen that's in your courtroom today is between Ms. Ashford and PwC LLP and PwC LLP only. Page 9 of the appendix shows in her complaint that she sued only PwC LLP. The only relevant party here is a defendant in this lawsuit. Nobody else could even move to compel arbitration. And the agreement also has other provisions that say, the firm has to pay the cost of arbitration. Why should PwC Kansas, why would it possibly pay for the cost of arbitration in this lawsuit that is defined by the terms of the plaintiff's complaint? Page A9 is crystal clear. She sued PwC LLP and PwC LLP only. But to the extent you have any doubts about that question, Judge Niemeyer, it too is subject to the general rule of ambiguities that is black letter law in the Supreme Court. To me it seems to be, and we'll address your colleague on this, but the most powerful aspect of all of this is the Supreme Court's language about the presumption of being created. Absolutely. Ambiguities. And while ambiguities results in statutory construction, like ruling ambiguities against the drafter, the Supreme Court clearly said ambiguities, which might read that way, you still have to read it with a presumption in favor of arbitration. We fully agree. And this court called it a heavy presumption. The late Judge Williams said that in Long. And then on top of that, she said that the party's intentions are generously construed. And certainly, although perhaps the provision could have been written better, it conveyed our intention to arbitrate these claims if we could. It has that troubling temporal adjective.  And it doesn't need the temporal adjective. Could it have been done better, Your Honor? I am willing to admit yes. But that is not the test under the FAA. If we're in the zone and our intentions were to communicate, and I think the provision does communicate the basic message that we wanted to arbitrate these Title VII claims to the extent that was allowable under federal law, nobody could have walked away failing to understand that. And in closing, I'd just like to emphasize that reversing the district court's judgment does not result in any loss of any statutory rights for Ms. Ashford. The circuit has said in Austin and Murray that you do not lose any substantive rights under an arbitration agreement where a motion to compel is granted. You just get to pursue those claims in an arbitral rather than a judicial forum. If she has a legitimate Title VII claim, she will receive relief in arbitration. Thank you. Thank you. Mr. Warman. I think the issue here is whether all of the Federal Arbitration Act does, broadly sprued, determinations of whether specific items, specific issues, specific disputes are covered. If they're unclear in the contract itself, it doesn't cover the formation of the contract itself. That's contract law. In this case, New York law. So that's the most important, at least that's the initial stage. And the circuit, the district court, used essentially a four-step analysis to determine this clause, whether it applied. But in the end, contract law still requires for both parties to have mutual assent to the terms of what they're agreeing to. And in this case, the contract is a unilateral employment contract. The employee reads it or is determined to have read it as a matter of law and determines then whether to accept or decline. There's no negotiations of the contract. The employer drafts it. So the employee in this case, the counterparty, has the option of reading the contract and then using its ordinary meaning terms, ordinary usage of terms, determining what the terms are. And if they are not ambiguous, then they need to be read as they were supposed to be read, and that's what the district court said. In this case, it is hard to argue, at least from my perspective in reading this, and I was born before 60. It's hard to read that, number one, this counterparty, this employee, and any employee signing this particular form agreement, whether it be a form agreement or not, would determine that federal law at that time prohibited at least the firm, and that's a detail. The firm is precisely defined within the arbitration agreement. A lawyer would read it to be that, and certainly an employee would read it the firm, and that's what it says, the firm. That's a defined term. It is a defined term. If the employee is an employee of X corporation as part of the group of corporations, it seems to me that when they say and, or, and the employee is only one corporation, when they use the firm throughout the agreement, they're referring to the firm relevant to the particular employee. I could understand that that would be one interpretation of it, but do you think it's ambiguous? I think it's at least ambiguous. But doesn't that hurt? I mean, if you concede ambiguity, haven't you walked right into the Supreme Court law that says you lose? Well, I certainly don't concede ambiguity to neither the district court. Well, I thought you just said it was. Pardon? I thought you just said it was ambiguous. Well, the term firm, as written in the arbitration agreement, if you would determine that to be ambiguous, even though it's defined as to whether it means specifically when it's the employee, your entity, the entity you're dealing with, versus the firm as a whole, which is all subsidiaries, it's in the context, to me, it's not ambiguous. Unless and until federal law no longer mandates. Basically, if you're reading this at a first take, we're not talking about good lawyers like you all are. Just at a first take, the agreement seems to suggest we want all our disputes resolved through arbitration. It's an ordered method. It's a quicker method. It's presumably less expensive, although I understand some arbitrations get pretty expensive today. But it's a controlled method unless we can't do it by federal law. And unless and until you want to have that until federal law. So somebody coming to this said, I'm going to arbitrate unless federal law interferes. And that's the take, isn't it? That's the take. As a lawyer reading this? No, no, as a layman. As a layman reading this, there's 12 or 13 exclusions. I have no idea. No, they have one exclusion. They say arbitrate unless federal law prohibits it. Well, in this particular exclusion, Title VII is excluded. You're going to arbitrate Title VII cases unless excluded by federal law. Right. That's sort of the take. And it doesn't say that exactly. It says unless until no longer. A lawyer that hadn't just researched the issue would presume, because it's at least implied if not simply stated, that federal law at that time, at the time of contract, prohibited it. I think the intent is to basically say we want to arbitrate everything. The way I would take it on a first read, we want to arbitrate all Title VII cases unless we're prohibited from doing so under federal law or until. If we're prohibited now, but then that is lifted later, then we want to arbitrate again. I think that's the general take. Now, when we start looking at it closer, these ambiguities arise that are being discussed both by you, the district court, and by Ms. Walker. I think you're right that the language is a little awkward, and lawyers might look at it a little differently. But what really the question I said I was going to bring to you really is the powerful statements that the Supreme Court has made on this issue. They've had no bones about it, the strong presumption in favor of arbitration, unless the presumption is rebutted. I think the presumption would be rebutted. I don't see that as satisfied by you and the district court. Well, I understand that position. I'm inviting you to. The district court found that the plain language of this limiting, certainly anybody reading this would say, okay, I'm going to be employed and Title VII claims are excluded, assuming they read it and assuming they were thinking about that. Title VII claims are excluded. I thought it started the other way around. Well, the wording starts, Title VII is excluded, unless and until federal law no longer mandates. Prohibits. Prohibits the mandating of arbitration. The entire arbitration agreement talks about firm. In other words, the right reading, the unambiguous reading of that in my opinion, Your Honor, would be all of the subsidiaries, not just the one that I'm in, because maybe federal law prohibits it. If one subsidiary does it, then the others can't have arbitration. I've never heard of the Franklin Amendment, I will admit, until this case. But in reading it, first of all, it never even mentions noncommercial contracts, and that's not even defined in the act that I can find. But that's the first, that's the district court's argument. Excuse me. Is that that was not ambiguous language. It means, number one, the firm is a firm, and that would include her employer, is prohibited right now, at least at the time of contract, from mandating arbitration. That's what it would mean. I mean, I understand that the efficiencies of mass-producing contracts and so on and so forth, but these are professional employees that would be an easy fix. That's what it says, and that's what the district court said it said. The district court took umbrage to the determination of whether either the Franklin Amendment should be substituted for federal law or unless and until federal law no longer prohibits that clause. The district court says that is not ambiguous. That has to happen in order for this limitation. Isn't that really the question? It's not whether federal law prohibited PwC from enforcing arbitration when she signed the agreement. The question in front of us is whether this falls within the scope, whether when she sued PwC was prohibited. And the clause certainly seems to, it's inartful, maybe, about what facts or law changes might affect it, but it certainly seems to put someone on notice that a condition might occur in the future that would make Title VII claims arbitrable. An employee would be on notice that a condition might change and the employee wouldn't have to assume anything. Federal law must change. That's what it says. That's what the district court said. It didn't say federal law must change. It says federal law must prohibit. And I understand your argument that that means federal law must change. The alternative argument is that federal law can be inapplicable because either the law changes or facts change. Now, that's our debate. Can it be construed the latter? And if that's not an unreasonable interpretation, federal law, Supreme Court law, says we have to presume in favor of arbitration. So I get your argument that there's no way that you think the other's a better reading. That seems like it's a bit of a stretch to say it can't be read the other way without being unreasonable. The question of whether or not someone reading this, an employee reading this, could determine, well, does that also mean that the firm engaging in certain activities or facts might also make it? Certainly that is a possible interpretation, but I don't think it rises to the level of ambiguous. This, with the expectation of the parties, federal law no longer prohibits federal law. Something would have to change. And the proffered evidence by the appellant is that nothing changed, ever. Well, what if they simply, Price Waterhouse, she's an employee of Price Waterhouse, it says you and the firm, so it's got to be that employment relationship. What if Price Waterhouse takes on a Department of Defense contract while she's working, and then she has a dispute in her Title VII? She gets the benefit of the Franken Amendment, doesn't she? I suppose she would. And that's a change in fact. Now, while she signs up, the firm had no DOD contracts with the government. A Franken Amendment wouldn't apply to Privet, and they could arbitrate Title VII claims. In other words, it seems to me that it almost focuses more on the facts than on the change of law. Because the nature of the Franken Amendment is when you have a defense contract, the contractor may not prohibit arbitration. And so the real question is, are there contracts with Price Waterhouse that are with the Department of Defense or not? And that clearly could change from day to day. Oh, no question it could change from day to day, and it's not just having a contract, but also seeking them. Getting to your firm business, I raised that question sort of to complete the whole range of questioning to Ms. Walker about the language, which is a little clumsy, but it seems to me her suggestion is probably the correct one. If you read the very first paragraph, the introductory paragraph to the arbitration agreement, it talks about valuing the employees and then says disputes between you, that is the employee, and the firm, and the firm meaning any one of the companies. So this agreement to arbitrate is not just between Price Waterhouse and you, but if you happen to be an employee of a Price Waterhouse subsidiary, it would apply to you also. I think that's the only take you could really take away from that introductory language, unless you've got another one that's better. Well, the district court... No, no, I'm just talking about you, what you would argue about the introductory paragraph. I would argue what the district court argued. In the context of this exclusion and the limiting language... Well, tell me how you'd read it then, the first paragraph. She was an employee of Price Waterhouse, right? And the question is, they recognize the importance of maintaining strong employee relations. We recognize, however, the possibility that legal disputes may arise between you and Price Waterhouse or any of its subsidiaries. But an employee relationship cannot arise between you and a subsidiary because she was an employee of a subsidiary. So that definition of firm, which includes Price Waterhouse or a subsidiary, would have to be, in this case, only Price Waterhouse. That's my only point. I think the dispute between the two, assuming it was actually entitled to... She wouldn't have a dispute between Price Waterhouse subsidiaries. She wouldn't have a dispute with that because she's not an employee. Assuming that the employer wasn't the whole of some sort of parent, I would agree. The issue, I think, is in relationship to this exclusion, the term firm in the arbitration. Well, doesn't the firm have to relate back to... The word firm is put in quotation marks in the first paragraph. It says, collectively, the firm. And then they define the firm, which was all of those things. Let me ask you, we've been talking a lot about the contractual interpretation aspect of this and probably covered at least most of that. It looks like you claim that the agreement was procedurally unconscionable on two grounds. One, you said that there's no choice. She had no choice. And the other is that there was some uncertainty about events that could change to make the federal law applicable or not. And that second point seems like it's much more in the substantive unconscionability camp. You've got pretty strong language against that in New York. And the first thing about no choice, I certainly grant that there's an argument she has unequal bargaining power. But that's the only factor, arguably, that exists under the law for procedural unconscionability. I mean, I don't really understand the unconscionability aspect of your position. And, again, in a unilateral contract where somebody reads what the agreement is and either assents to it or declines. A unilateral contract, but both sides agreed to it. Well, in the performance, all right, whether it's a unilateral contract. Let's just say it's a bilateral contract. There's certainly no negotiation power. The issue here was. But it's like almost every employee in the United States. I mean, you get a job. You have a manual. And it has conditions that have arbitration agreements. You don't have to take the job. But you take the job. You subscribe to the conditions. You're going to arbitrate all your disputes except for Title VII unless Title VII is no longer prohibited with respect to federal law. And is that unconscionable to move a dispute from a court to arbitration forum? Certainly arbitration is not in and of itself unconscionable. No. I'm not trying to argue that. Okay. The question is, is what the employee knows, what the employee understands with the plain, ordinary meaning. But they know, shouldn't they at least know there's a risk that they might, that Title VII claims might be, there might be a question or not about whether they're subject to arbitration. They may not know the exact facts that would apply later. But don't, if you read it, don't you know that there's a risk that you're going to have to arbitrate your Title VII claims. And if that's true. If those limiting, I think one would also need to know. I think the employee would, should be able to know, should understand from the ordinary reading what those limitations would be, what needs to happen for that to happen. So is there something that says if you, I mean, it just seems to me, and maybe I miss this, but if all the events that aren't, you know, there's at least a risk that your Title VII claim might be subject to arbitration, yeah, I understand why you might want it to be more specific. But why does that make it unconscionable, if you know that risk is out there? At least in the formation of the contract, when someone assents. In this case, it's pretty clear that this person was assuming, or the reading of this language is the Title VII claims were precluded. We understand from the proffered evidence that that wasn't true at the time. Then we go to the time of the claim, which I believe was 2017. The time of the claim, the same thing applies. If something were to have changed, and I would suggest maybe the Frankenman, that didn't exist anymore. It had been undone by whatever Congress. Then that would be something that could be traceable. It's not just known to the employer. I thought that was a provision of, I thought that was just part of contract law, that two parties can agree to a condition in a contract, and whether that condition is going to be satisfied is really only within the parties, whether it's going to have the capacity to produce as many widgets as it's promised or whatever. The parties can agree to that condition, even though one of the parties is not necessarily going to be privy to knowing if the condition is satisfied. That's true. They should be able to discover it at some point. She certainly could have asked. The widget argument, if a contract bilateral between two parties, widgets will be $10 a piece until and unless our suppliers raise the price. Then they'll be $15. You enter into that contract. It turns out that the suppliers had already raised the price. This was a forum contract three years ago. Is that, does the counterparty have, is that wrong? Was that a reasonable interpretation of that clause, that they were at $10 now? Well, you're suggesting that an ambiguity or an awkwardness in the drafting of a forum contract because it creates some ambiguities is unconscionable. Let me ask you this. You have a 1981 claim, right? Yes. And that's not subject to, that is subject to arbitration, undisputedly, right? Right. Is that unconscionable? No. Why not? Because it wasn't excluded. Well, it seems to me if an agreement that says Section 1981 claims are arbitrable and Title VII claims are not arbitrable unless and until the federal law doesn't apply. The unconscionability. The only unconscionable issue you could claim is the, what, lack of clarity? It's really not lack of clarity. It's language that states something that's simply not true and that has no relation to what the actual limitations were going to be. It would be impossible, especially for an employee. Well, I think this is clearly in there not assuming changes in law. It does assume changes in law. But I think it recognizes that private companies can enter into contracts with the Department of Defense from time to time, and we have from time to time. And when we are in that relationship, we don't arbitrate Title VII's. And when we are not in that relationship, we'll arbitrate Title VII's. Isn't that a fair take? I think after all we've learned, after everything, yes. But there's no way in the world an employee would have any idea that that was true. So I guess the question becomes is that something that an employee should know, or in this case a counterparty? No, it just happens to be a risk of where you're going to litigate a particular dispute. It doesn't even take anything away. It just basically says I think the arbitration is intended to take all disputes they can to arbitration, and the employee agrees to that. There is an exception because that would violate federal law. And in that case, we're going to go to federal court now. The fact that the employee can't figure out all the circumstances when it goes to federal court or to arbitral court or forum, I don't see how that's arbitral. That's sort of an agreement. Disagreement didn't say that. I'm not saying that you can't arbitrate Title VII. Let's assume it did. Let's assume it said Title VII claims are excluded unless factually or legally it's not prohibited to arbitrate. Your client, that unambiguously covers changing facts, right? Assuming there are changing facts, yes. And your client still wouldn't know them, wouldn't have access to that information. That would have to be something. Would that be unconscionable? I think it would be if it wasn't true at the time. These are excluded. What if it said whether now or hereafter federal law or Title VII claims can be arbitrated based on the facts and law that exists now or as they might change? Fair enough. So your basic argument is the lack of clarity is what makes it unconscionable. It seems to me you're conflating the ambiguity with the unconscionability. The unconscionability is that an employee signing this agreement, based on the clear reading of it or of that term, would assume, one, federal law needs to change or possibly that facts allowing the firm need to change. Something needs to change. Something needs to be different. That right now federal law does not mandate Title VII in deciding to assent to the contract. And I understand arbitration may not be you lose specific substantive rights, but waiving the right to a jury trial, which is a statutory right, is a significant thing to waive. And you need to have knowing and voluntary waiver of that. It can't be done here. Not with this language. The last sentence that you stated, whether now or, I can't do it exactly. Well, Jake, make it even clearer. She's signing the agreement, and the provision says we, at the present time, we have a Department of Defense contract. So all Title VII cases will not be arbitrated. But at such time as we no longer have Department of Defense contracts, we are going to arbitrate Title VII claims. Fair enough. Now, that's a risk. No one knows what's going to happen. She doesn't know the facts. The company doesn't even know the facts. It's in the future. It's a contingency. But she agrees to that, and you say that's okay, right? Well, you would certainly know that it was a contingency of which you couldn't know. Okay. So basically you get back to Judge Guadalupe's question. It's the lack of clarity with the language that you think forms the basis for unconscionability. Lack of assent and unconscionability. I mean, it's a hidden clause, essentially. Okay. Thank you. You're welcome. Ms. Walker? I'd like to start with the FAA, make three points about that, and then turn to the unconscionability questions. Judge Niemeyer, you pointed us to the other exclusions in the list, and I think that's an excellent exercise. Page 46 of the appendix shows that most of these exclusions are wholly unqualified. Consider the exclusion for, quote, disputes arising under the National Labor Relations Act. Full stop. Even a layman, even a non-lawyer, would look at the Title VII exclusion against the backdrop of these other exclusions. Consider gee whiz, the Title VII exclusion seems different. And Ms. Ashford is not an average person. She's not even a layman. She has degrees from Harvard, Columbia, Stanford, and Dartmouth. She's not an unsophisticated person with all respect. Secondly, the notion that there's a hidden meaning here is not some secret plot on the part of my client to deceive anybody. It is a function of the way Congress wrote the Franken Amendment. Coverage under the Franken Amendment can fluctuate because it's a fact intensive inquiry. It depends on having contracts over a certain dollar threshold at a particular point in time. That's the nature of the Franken Amendment. That's the way Congress wrote the coverage provision. That's not our fault. That's the way Congress wrote it. Hidden, I think to that point, the question is whether hidden and uncertainty are synonymous. And I think the fact that I don't think, is your position that they're not? Not at all. Not at all. And third, under the FAA rubric here, there was something that changed. The executive order changed. So even on my friend's theory and the district court's theory, there was a change in law. The executive order, President Obama's executive order, existed with Ms. Ashford signing the agreement. We were planning for its implementation. That implementation was enjoined in October 2016. And in March of 2017, the EO was fully repealed by President Trump. So that at least changed. So even on the district court's theory and my friend's theory, there was a change in law. We don't stake our case on that, Judge Quattlebaum, but the fact is it's not true that nothing changed with respect to federal law itself. I mean, you can make whatever argument you make, but by suggesting a non-applicable change, I'm not sure that's helping you. Because I think your argument's got to be that the clause applies, or that you arbitrate Title VII's unless you're actually or legally prohibited. But I think it's illustrative of the way in which federal law was changing and evolving in a very unpredictable and fast-paced way during this entire time, and our good faith intentions to write a flexible provision that accounted for that and yet got across the basic message, as you were saying, Judge Niemeyer, that we wanted to subject Title VII claims to arbitration if federal law allowed us to do that. Turning to the unconscionability bucket, I think I heard my friend concede that any problems here go to the contract formation process. That's governed by New York unconscionability law. So let's look at that law. That law says that even a take-it-or-leave-it contract is not procedurally unconscionable. That's the Second Circuit's decision in Ragone at page 122. New York law also makes clear that a person who has failed to allege, and there is nothing in this record to support this, who has failed to allege that she even read the agreement, at pages 68 and 69 of the appendix, Ms. Ashford just says she doesn't remember seeing it. She never says she read it, and she never says she relied on any understanding about the status of Title VII claims when she formed the contract. That's devastating. That's devastating to any procedural unconscionability finding here. On top of that, New York courts make clear, for instance, that even Chinese immigrants, this is the Southern District of New York decision in Hakkasan, even Chinese immigrants who don't speak or read or understand English have a meaningful choice when they enter into an arbitration agreement because they could have asked questions and asked somebody for help in how to understand it. Ms. Ashford, with her many multiple degrees, certainly had a meaningful choice here. At the end of the day, your honors, Ms. Ashford can't point to any provision of federal law that prohibits PwC from carrying out on its intention to submit this claim to arbitration. She won't lose any substantive rights under Title VII. If that happens, she will just proceed in arbitration, and if she has a legitimate claim, she will receive relief. Is that about it? Well, I was just going to say, in light of the low bar for interpreting contracts under the FAA and the exceedingly high bar for unconscionability under New York law, we'd ask you to reverse the judgment of the district court and remand with instructions to grant the motion to compel. Thank you. We'll come down to the Greek Council and proceed into the next.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Allison J. Rushing